# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE   )
           )
   v.        )  ID Nos. 1409004992
           )     1409006424
SHUKRI THOMAS,   )
           )
  Defendant.   )

Submitted: December 19, 2020
Decided: December 30, 2020

*Upon Motion of Shukri Thomas*
*for Appointment of Counsel to Pursue Postconviction Relief*
**GRANTED**

## OPINION

Shukri Thomas, *self-represented litigant.*

Allison J. Abessinio, Esquire, Abolore J. Oshodi, Esquire, Valerie Hall Farnan, Esquire, Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

**Rocanelli, J.**

Shukri Thomas is a member of our community who suffers from severe and persistent mental illness.[1] When Shukri Thomas is compliant with treatment, faithfully taking his medication as prescribed, he radiates exuberance and self-assurance, channeling his positivity and enthusiasm into making music. When Shukri Thomas stops taking his mental health medication as prescribed, his mood plummets, he quickly decompensates, he self-medicates with street drugs and alcohol, he experiences psychosis, and he often becomes violent.[2] Over the years, with each psychotic episode and resulting decompensation, Shukri Thomas's baseline functioning has decreased and his mental health has worsened. Shukri Thomas's mental health has been the most stable, for the longest periods of time, when he is in a highly structured setting, such as the Delaware Psychiatric Hospital ("DPC")[3] or a correctional facility. In the community, even when assigned to the highest level of outpatient care, Shukri Thomas becomes non-compliant with his

---

[1] Shukri Thomas's mental health is affected by many factors, including schizophrenia, psychosis, anxiety, substance abuse, traumatic brain injury, disordered mood and trauma. *State v. Thomas*, Nos. 1409004992, 1409006424 & 170401286, at 34–35, 40–41 (Del. Super. June 4, 2019) (TRANSCRIPT) [hereinafter "Thomas Involuntary Inpatient Commitment Hearing June 2019"].

[2] Individuals with schizophrenia may display a variety of symptoms including hallucinations, delusions, thought disorders and movement disorders. Coy C. Morgan, *Three Generations of Injustice are Enough: The Constitutional Implications Resulting From the Criminalization of the Mentally Ill*, 25 S.U.L. REV. 29, 70 (2017).

[3] DPC is the only state-operated inpatient psychiatric facility in Delaware.

prescribed medications, abuses various substances, experiences psychosis and becomes violent.[4] However, other than at DPC or in a correctional facility, a highly structured setting for someone with Shukri Thomas's needs is unavailable in Delaware.

Currently, Shukri Thomas is incarcerated pursuant to a Sentencing Order dated October 21, 2019. This Court exercised its discretion to impose a lengthy

---

[4] According to Daniel Grimes, M.D. ("Dr. Grimes"), who was the treating psychiatrist for Shukri Thomas at DPC, there are many barriers to successful treatment for Shukri Thomas and many precipitating causes for the psychotic episodes which Shukri Thomas experiences. Dr. Grimes explained, as follows:

> . . . based on the records it appears that very frequently there will be a period of agitation that will occur where there may be threatening violence towards other people. And there's a number of precipitants that caused that for one admission versus another, as best as I can determine. In some instances, there has been illicit drug abuse, cocaine, marijuana and other drugs of choice. In other cases there was no drug use. In some cases there was noncompliance with prescribed medication. In other cases there was compliance yet there were incidents of violence and there were mental health symptoms. There [are] a number of factors that appear to be ongoing here: One is schizophrenia, one is substance abuse, another is a history of traumatic brain injury, another factor is a history of having been a victim of abuse himself, and then one more has been a propensity towards violence. . . . [B]ecause there are so many factors involved, it could be any one of these precipitants that could lead to future symptoms, drug use, noncompliance with medication, social factors such as the people he comes into contact with, and then also with schizophrenia, the symptoms do tend to wax and wane, and even from day to day it's not always possible to predict whether or not someone will develop symptoms of schizophrenia from day to day.

Thomas Involuntary Inpatient Commitment Hearing June 2019, Nos. 1409004992, 1409006424 & 170401286, at 40–41.

sentence of total confinement because an alternative highly structured residential setting for long-term effective treatment and supervision was unavailable in Delaware. Accordingly, the Court reluctantly concluded that a lengthy prison term was the only long-term placement option which would protect the community from violence by Shukri Thomas and was also the most humane option for Shukri Thomas. Specifically, short-term civil commitment resulted in a revolving door of stabilization, followed by release to the community, followed by decompensation and culminating in violence. Thus, incarceration was not only the safest option for the community but incarceration was also more stabilizing for Shukri Thomas who experienced a steady deterioration in baseline functioning with each damaging cycle.[5]

Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that otherwise have become final."[6] As a self-represented litigant, Shukri Thomas filed a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure, and also filed a motion for appointment of counsel to pursue postconviction relief. Typically, appointment of

---

[5] With each psychotic episode, Shukri Thomas's baseline deteriorated more and more. "The Court: . . . with each psychotic episode, [Shukri Thomas's] baseline actually deteriorates, so that it takes more medication to stabilize him." *State v. Thomas*, Nos. 1409004992 & 1409006424, at 20 (Del. Super. Oct. 21, 2019) (TRANSCRIPT) [hereinafter "Thomas Sentencing Hearing Oct. 2019"].
[6] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

counsel is not available where, as here, the conviction results from a guilty plea. However, because the Court finds there are specific exceptional circumstances, counsel shall be appointed so that Shukri Thomas will have a meaningful opportunity for collateral attack on his conviction and sentencing.

## Challenges to Institutional Treatment of Persons Suffering with Mental Illness

A major upheaval in the standard of care for persons with mental illness was spurred by the United States Supreme Court's decision in *Olmstead*, in which the Court applied the anti-discrimination provision contained in the Americans with Disabilities Act ("ADA") to treatment of persons with mental illness.[7] Specifically, the Court addressed whether "the proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions" and answered with a "qualified yes."[8] According to *Olmstead*, "States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities."[9] The *Olmstead* Court also emphasized that the ADA "stated in aspirational terms that '[t]he treatment, services,

---

[7] *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).
[8] *Id.* at 587.
[9] *Id.* at 607.

and habilitation for a person with developmental disabilities . . . *should be* provided in the setting that is least restrictive of the person's personal liberty.'"[10] On the other hand, *Olmstead* did not categorically prohibit long-term inpatient care.

Almost ten years after the issuance of *Olmstead*, in 1997, the United States Department of Justice ("USDOJ") launched an investigation into the treatment by Delaware of individuals with mental illness who were institutionalized in DPC.[11] The investigation lasted three years and concluded with an assessment that was critical of Delaware's compliance with the ADA. Based on the findings, the USDOJ filed a lawsuit in the United States District Court for the District of Delaware challenging Delaware's institutionalization of persons with mental illness.[12] This lawsuit was resolved with a settlement agreement to implement the redesign of Delaware's mental health system ("USDOJ/DE Settlement Agreement").[13] As part

---

[10] *Id.* at 599 (omission in original) (quoting 42 U.S.C. § 6010(2) (1976 ed.)).

[11] "For many decades, the majority intensive services for persons with [serious and persistent mental illness] were in an institutional setting. There were community services, but as a general rule people with the most severe disability were served in an institutional setting." DIV. OF SUBSTANCE ABUSE & MENTAL HEALTH, FOURTH PROGRESS REPORT ON IMPLEMENTATION OF THE SETTLEMENT AGREEMENT BETWEEN THE U.S. DEPARTMENT OF JUSTICE AND THE STATE OF DELAWARE 20 (June 2016), https://dhss.delaware.gov/dhss/dsamh/files/Fourth_DOJ_DE_Report_062416.pdf [hereinafter "Fourth Progress Report"].

[12] *See* Compl., *United States v. Delaware*, No. 11-591 (Del. D. filed July 6, 2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/11/02/DE_MH_Complaint_7-6-11.pdf.

[13] *See* Settlement Agreement, *United States v. Delaware*, No. 11-591 (Del. D. filed July 6, 2011), https://www.ada.gov/delaware.htm. "The Settlement Agreement specified five target areas – crisis services, intensive support services, housing,

of the USDOJ/DE Settlement Agreement, Delaware agreed to augment its services to keep individuals with mental illnesses out of institutions, create additional community-based support systems, and reform conditions at DPC.

By design, the USDOJ/DE Settlement Agreement reduced the number of individuals with mental illness in Delaware who were institutionalized, and replaced institution-based services with community-based services.[14] Delaware has interpreted the USDOJ/DE Settlement Agreement to prohibit long-term inpatient treatment for mental illness. As a result, long-term inpatient treatment for mental illness is not available in Delaware. DPC, Delaware's only state-operated inpatient psychiatric facility in Delaware, provides acute inpatient psychiatric treatment, but not long-term inpatient treatment.[15] While Delaware acknowledges that "[t]reatment is never 'one size fits all[,]'"[16] the unavailability of long-term inpatient treatment in Delaware suggests otherwise. While the USDOJ/DE Settlement Agreement addressed institutionalizing *too many people*, Delaware now fails to provide a

---

supported employment and rehabilitation services, and family and peer supports." Fourth Progress Report, *supra* note 11, at 3.

[14] *Id.* at 20–21.

[15] DPC is part of the Division of Substance Abuse and Mental Health ("DSAMH"), which is a division of Delaware Health and Social Services ("DHSS"). According to DHSS, "short-term acute inpatient care" is "intended to help stabilize clients and discharge them back into the community within 14 days." *Id.* at 28.

[16] *Id.* at 21.

6

humane institutional setting for those few citizens who need long-term inpatient treatment.

Despite best intentions, therefore, deinstitutionalization has trapped many citizens with mental illness in a revolving door of commitment, discharge from commitment, homelessness, substance abuse, crime and incarceration.[17]  Shukri Thomas is one of our citizens trapped in this revolving door.  Prisons have become America's *de facto* mental institutions,[18] including in Delaware[19] and, as addressed herein, for Shukri Thomas.[20]

---

[17] *See* Morgan, *supra* note 2, at 33 n.20.

[18] *Id.* at 31.

[19] Inmate mental health services are addressed in Policy Number F-03 of the Department of Correction ("DOC"), approved June 19, 2020.  *See* Delaware Department of Corrections Bureau of Healthcare Substance Abuse and Medical Health Services No. F-03 (amended effective June 19, 2020), https://doc.delaware.gov/assets/documents/policies/policy_11-F-03.pdf.    Inmate medical and mental health care services in Delaware had been the subject of a Memorandum of Understanding between the DOC and USDOJ signed on December 30, 2006 and amended on December 30, 2009.  DOC was released from monitoring as of December 31, 2012.  DOC's Bureau of Correctional Healthcare Services was created in response to the need for improvements in inmate care.  *See* Press Release, Department of Correction Released from AMOA on Inmate Medical & Mental Health Care Services with USDOJ (Dec. 31, 2012), https://doc.delaware.gov/assets/documents/newsroom/2012/12press1231.pdf.

[20] During the entire six-year period of court supervision for the charges arising from Shukri Thomas's arrests on September 7, and 9, 2014 until he was sentenced by the Court for violations of probation on October 21, 2019 – Shukri Thomas lived in the community for less than six months, specifically for 149 days.  10/12/2016–10/27/2016 (15 days); 11/9/2016–12/20/2016 (41 days); 3/29/2017–4/17/2017 (20 days); 2/3/2018–3/27/2018 (53 days); 11/16/2018–12/2/2018 (17 days).  For the balance of that six-year period, Shukri Thomas was either confined at Howard R. Young Correctional Institution (nearly 2.5 years, specifically 938 days), or he was

## Criminalization of Mental Illness

On September 7, 2014, Shukri Thomas was arrested when police found him walking on Interstate 95, shirtless, not carrying a light, and in possession of crack cocaine. When stopped by the police, Shukri Thomas reported that he was on his way to California.[21] In connection with this incident, Shukri Thomas was charged with aggravated possession of cocaine (a violent felony), as well as misdemeanor criminal impersonation and the violation of walking on the highway without a light.[22]

At the time of this arrest, Shukri Thomas had stopped taking his prescribed mental health medication and was abusing street drugs. He was charged and released. At this point, Shukri Thomas had begun a downward spiral, and his criminal behavior escalated. Two days after his release for the first arrest, on September 9, 2014, Shukri Thomas was arrested for more serious charges, including

---

at DPC pursuant to civil commitment or confined in DPC's Mitchell Building. 9/9/2014–8/4/2015 (330 days); 7/5/2016–7/18/2016 (14 days) 4/18/2017–2/3/2018 (292 days); 3/27/2018–11/16/2018 (235 days); 12/2/2018–2/6/2019 (67 days).

[21] *See* Thomas Involuntary Inpatient Commitment Hearing June 2019, Nos. 1409004992, 1409006424 & 170401286, at 31 ("Counsel for Shukri Thomas: [Shukri Thomas was] walking down I-95 with 2 grams of crack cocaine . . . telling the police officer he's going to California."). *Id.*

[22] *See* 21 *Del. C.* § 4148 ("No pedestrian shall walk upon any roadway or shoulders of any roadway of this State that is used for motor or vehicle traffic, beyond the corporate limits of any city or town, without carrying a lighted lantern, lighted flashlight or other similar light or reflector type device during the period of time from sunset to sunrise and at any other time when there is not sufficient light to render clearly visible any person or vehicle on the highway.").

Robbery in the First Degree (a violent felony).[23]  This time, Shukri Thomas was detained.

A competency evaluation was ordered by the Court on September 23, 2014 for a determination of whether Shukri Thomas was competent to stand trial.  The Court received a report from DPC on December 5, 2014 concluding that Shukri Thomas was not competent to stand trial.  Defense counsel and the State agreed to accept DPC's conclusion and elected not to present additional evidence for the Court's consideration.  By Order dated January 14, 2015, the Court ruled that Shukri Thomas was not competent to participate in the criminal proceedings.[24]  The Court

---

[23] According to the affidavit submitted by the arresting officer, Shukri Thomas entered a small neighborhood market and "asked if he could get a drink."  The store clerk reported that the unknown black male showed a penny and walked towards the refrigerators.  The male took a mango drink valued at $1.00 (one dollar) from the refrigerator, displayed a brick from his sweatshirt pocket and left the store without paying.  The store clerks feared for their safety and contacted police.  While the police were investigating, Shukri Thomas returned to the store and was identified as the person who took the mango drink.  Video surveillance confirmed the report and identification.  Shukri Thomas was charged with Robbery First Degree for this crime.  *See* Officer's Aff. Ex. A, Sept. 9, 2014.

[24] The Delaware Criminal Code provides:

> (a) Whenever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is unable to understand the nature of the proceedings against the accused, or to give evidence in the accused's own defense or to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial.  However, upon motion of the defendant, the court may conduct a hearing to determine whether the State can make out a prima facie case against the defendant, and if the State fails to present sufficient evidence to constitute a prima facie

also ordered that Shukri Thomas be transported to DPC "where he is to be confined and treated, up to and including involuntary administration of medications deemed psychiatrically appropriate by treating physicians, until he is capable of standing trial and/or until such time as the Court deems appropriate."[25] After treatment at DPC, by Order dated May 26, 2015, Shukri Thomas was deemed competent to participate in the pending criminal proceedings.

A plea agreement to resolve both sets of charges was negotiated by defense counsel and the State. On July 29, 2015, Shukri Thomas pleaded guilty to Aggravated Possession of Cocaine in a Tier 4 Quantity and Robbery in the Second Degree.[26] At the time of his Guilty Plea, Shukri Thomas was stable because he had been in a structured setting and was compliant with his prescribed mental health medications.[27] The Court addressed Shukri Thomas personally in open court and determined that Shukri Thomas understood the nature of the charges and the

---

case, the court shall dismiss the charge. This dismissal shall have the same effect as a judgment of acquittal.
(b) When the court finds that the defendant is capable of standing trial, the defendant may be tried in the ordinary way, but the court may make any adjustment in the sentence which is required in the interest of justice, including a remission of all or any part of the time spent in the Psychiatric Center.

11 *Del. C.* § 404.

[25] *State v. Thomas*, No. 1409006424, Vavala, Comm'r (Del. Super. Jan. 14, 2015).

[26] Each of these crimes is a violent felony pursuant to 11 *Del. C.* § 4201(c).

[27] The Court's Order dated January 14, 2015 required medication to be administered without consent if Shukri Thomas declined to take prescribed medications voluntarily.

maximum possible penalties provided by law.[28] The Court found that the waiver by Shukri Thomas of his constitutional trial rights was knowing, intelligent and voluntary.[29]

By Order dated July 29, 2015, Shukri Thomas was committed to the custody of the Department of Correction ("DOC") for a total of 20 years of incarceration, with credit for time served. The term of confinement imposed by the Court was suspended for involuntary inpatient civil commitment,[30] followed by 2 years of intensive community-based supervision. Accordingly, the Sentencing Order dated July 29, 2015 contemplated that Shukri Thomas would be subject to inpatient civil commitment before he would be released to the community. Consistent with this Court's July 29, 2015 Order, on August 4, 2015, Shukri Thomas was transferred

---

[28] Super. Ct. Crim. R. 11(c)(1).

[29] *See Brown v. State*, 984 A.2d 123 (Del. 2009) (finding the defendant's plea was made knowingly, voluntarily and intelligently based on the record of the plea colloquy).

[30] Title 16, Chapter 50 of the Delaware Code codifies the process by which an individual may be involuntary committed for mental health treatment. *See* 16 *Del. C.* § 5001 et seq. The State, acting on behalf of the mental health provider must prove that the person suffers from a mental health condition, they pose a danger to themselves or others, the individual has declined voluntary treatment or lacks the capacity to consent, and the proposed placement is the least restrictive alternative. 16 *Del. C.* § 5002. Involuntary commitment requires the Court to first find that probable cause exists for the confinement and then to find, at a subsequent hearing, that the State has established clear and convincing evidence for the commitment.

from the so-called "criminal side" of DPC in the Mitchell Building[31] to the so-called "civil side" of DPC.[32] The placement at DPC was consistent with the argument of defense counsel that psychiatric hospitalization was more appropriate than total confinement in a prison setting. Moreover, per the Order dated July 29, 2015, Shukri Thomas would not be released from DPC until he was assigned a Community Re-Integration Support Program ("CRISP") multidisciplinary team providing in-home comprehensive services including psychiatric and medical care, substance abuse treatment, 24-7 crisis management, daily living assistance and help to obtain and keep housing.[33] In addition, Shukri Thomas would be closely supervised in the community by a probation officer and in Mental Health Court ("MHC").

Over the many years that Shukri Thomas was supervised in MHC, scores of hearings were conducted. The hearings highlighted Shukri Thomas's need for long-

---

[31] DPC's Jane E. Mitchell Building is a 42-bed forensic psychiatry unit. It is a locked facility for persons in the custody of the DOC, including persons charged with crimes and awaiting psychiatric evaluation pursuant to 11 *Del. C.* § 404; for persons serving sentences pursuant to 11 *Del. C.* §§ 405, 406; and for persons found not guilty by reason of insanity pursuant to 11 *Del. C.* § 403 or guilty but mentally ill pursuant to 11 *Del. C.* § 408. It is the equivalent of total confinement in a DOC Level 5 correctional facility.

[32] DPC provides acute inpatient psychiatric treatment for persons who are subject to civil commitment.

[33] Pursuant to 16 *Del. C.* § 5018(b), a "written continuing care plan" is required and must include "identification of available support services and provider linkages necessary to meet the assessed needs[] and identification and a timetable of discrete, predischarge activities necessary to promote the patient's successful transition to the community-based services system or to another appropriate post-discharge setting."

term treatment and compliance with prescribed medications. The Court and MHC team wrestled with the challenges created when Shukri Thomas was transferred from one facility to another and between various facilities and the community. For example, the treatment providers at each venue used a different formulary, prescribing a different version of various medications, each with different side effects and varying levels of effectiveness.[34] In addition, the Court convened countless meetings of Shukri Thomas's multidisciplinary treatment team in an effort to secure effective treatment in the least restrictive setting.[35] These efforts included status conferences, hearings on violations of probation[36] and involuntary inpatient civil commitment hearings.[37]

---

[34] "The Court: [Shukri Thomas's] treatment needs are so highly specialized and he is so sensitive to the medication that we really fail him and fail the community when we [change his medications at different facilities]." Thomas Involuntary Inpatient Commitment Hearing June 2019, Nos. 1409004992, 1409006424 & 170401286, at 21.

[35] *See Olmstead*, 527 U.S. at 599 (stating that individuals with developmental disabilities should be provided a setting that is least restrictive of the person's personal liberty).

[36] Shukri Thomas was found in violation of probation on at least six separate occasions between July 2016 and October 2019. Shukri Thomas failed to comply with the terms and conditions of probation on many more than six occasions during this time period but, urged to consider lesser sanctions by counsel for Shukri Thomas, the State, Probation & Parole and the Court agreed that graduated sanctions should be utilized whenever possible.

[37] Pursuant to 16 *Del. C.* § 5011(d), "the court must convene a hearing . . . at least once every 3 months to review whether continued involuntary inpatient treatment is necessary."

During much of this time period, Shukri Thomas remained at DPC pursuant to a court order of involuntary inpatient commitment. However, DPC took the position that Shukri Thomas must transition to the community once stable.[38] According to DPC, discharge was required because Shukri Thomas no longer satisfied the criteria for involuntary hospitalization pursuant to the emergency detention, provisional admission or involuntary commitment.[39] Therefore, in anticipation of his release from DPC, the focus was on Shukri Thomas's gradual re-integration to the community from DPC, starting with release from DPC to the community on day passes while supervised by his CRISP team and progressing to weekend passes.[40]

The short-term goals of civil commitment did not provide the long-term support needed by Shukri Thomas, whose mental status became increasingly destabilized as efforts to reintegrate him into the community intensified. For example, it was reported to the Court by Probation & Parole that Shukri Thomas had police contact on February 13, 2019 as the result of a verbal altercation while in the community on a day pass. Shukri Thomas admitted he had been using alcohol,

---

[38] Thomas Involuntary Inpatient Commitment Hearing June 2019, Nos. 1409004992, 1409006424 & 170401286, at 15; *State v. Thomas*, Nos. 1409004992 & 1409006424, at 6 (Del. Super. Aug. 20, 2019) (TRANSCRIPT) [hereinafter "Thomas Violation of Probation Hearing Aug. 2019"].
[39] 16 *Del. C.* § 5018(a).
[40] Thomas Violation of Probation Hearing Aug. 2019, Nos. 1409004992 & 1409006424, at 50–51.

14

which was a violation of a condition of probation. In addition, at DPC on March 31, 2019, Shukri Thomas assaulted another patient.

The final civil commitment hearing took place on June 4, 2019. The Court expressed its serious concerns that the treatment provided for Shukri Thomas had been inconsistent, ineffective and had not been provided in the least restrictive setting. The Court expressed frustration that each DPC commitment was merely long enough for Shukri Thomas to be stabilized and that, promptly upon stabilization, the State of Delaware took the position that he must be released.[41] Once released to the community, Shukri Thomas would stop taking his medications, destabilize, decompensate, start taking street drugs and using alcohol, and become violent. Although the State claims to recognize that "[t]he Supreme Court in Olmstead [sic] did not mandate community treatment if such treatment is not appropriate for a given individual,"[42] with respect to Shukri Thomas, the State has consistently insisted that *Olmstead* and the USDOJ/DE Settlement Agreement

---

[41] *See* 16 *Del. C.* § 5018:
> Hospitals shall examine every involuntary patient and voluntary patient present in its facility as frequently as practicable, but not less often than every 3 months. If pursuant to such examination a person's treating psychiatrist determines that a person no longer satisfies the criteria for involuntary hospitalization pursuant to the emergency detention, provisional admission or involuntary court commitment sections of this chapter . . . the patient shall be discharged.

16 *Del. C.* § 5018(a).

[42] Fourth Progress Report, *supra* note 11, at 21.

*required* that Shukri Thomas be released from DPC to the community as soon as Shukri Thomas was stabilized in the highly structured and supportive environment of DPC.[43]

A violation of probation hearing took place on August 20, 2019. The Court found Shukri Thomas in violation of probation and imposed additional conditions including GPS monitoring by Order dated August 20, 2019, effective December 2, 2018.[44] Nevertheless, DPC's efforts for transition to the community continued. While Shukri Thomas did fairly well on DPC day passes with his CRISP team, his behavior became increasingly erratic once he was permitted weekend passes.

During Shukri Thomas's first weekend pass on September 21, 2019, the CRISP team reported that Shukri Thomas was "repeatedly consuming alcohol and went AWOL from his CRISP team during that weekend pass from [DPC]."[45] Police responded to assist. When the police finally located Shukri Thomas, he threatened the officers and "told the officers to shoot him."[46] Accordingly, the efforts to

---

[43] "The Court: … the problem with the psychiatric center is the lack of availability of long-term treatment and the need on the civil side to continually assess for release as we have been doing . . . the [civil commitment] statute does not actually provide an option for long-term [in-patient] treatment." Thomas Sentencing Hearing Oct. 2019, Nos. 1409004992 & 1409006424, at 15–16.

[44] Thomas Violation of Probation Hearing Aug. 2019, Nos. 1409004992 & 1409006424, at 47–49.

[45] Thomas Sentencing Hearing Oct. 2019, Nos. 1409004992 & 1409006424, at 7–8.

[46] *Id.* at 8.

reintegrate Shukri Thomas nearly resulted in "suicide by cop."[47] Thus, the ambitious and well-intentioned plan for community-based supervision of Shukri Thomas failed. The Court was left no choice but to incarcerate Shukri Thomas because he was not amenable to community-based supervision. In the community, Shukri Thomas posed a danger to himself, to the community and to first responders.

Shukri Thomas was sentenced by Order dated October 21, 2019 to an aggregate of 17 years of total confinement: 13 years of incarceration for Tier 4 Possession of Crack Cocaine and an additional 4 years of incarceration for Robbery Second Degree, to be served consecutively. The Court ordered decreasing levels of supervision after 17 years of total confinement. The sentence imposed was within the statutory range of penalties for each offense set by the Delaware legislature but far exceeded the SENTAC Guidelines.[48] This Court recognizes that long-term incarceration is problematic under these circumstances.

---

[47] "Suicide by cop" or alternatively "police-assisted suicide" is often defined as "a situation in which a suicidal, distraught and often unbalanced individual comes into contact with law enforcement officers, and through life-threatening actions causes the police to retaliate in self-defense or defense of others by killing the person." Rahi-Azizi, *When Individuals Seek Death at the Hands of the Police: The Legal and Policy Implications of Suicide by Cop and Why Police Officers Should Use Nonlethal Force in Dealing with Suicidal Suspects*, 41 GOLDEN GATE U. L. REV. 183, 184, 188 (2011) (internal quotations omitted).
[48] *See generally* Delaware Sentencing Accountability Commission 2019 Benchbook Guidelines (creating sentencing guidelines as established under 11 *Del. C.* § 6580).

## **Shukri Thomas Appeals to the Delaware Supreme Court**

On November 14, 2019, Shukri Thomas filed a timely appeal in the Delaware Supreme Court challenging the sentence imposed by this Court by Order dated October 21, 2019.  In his direct appeal, Shukri Thomas argued that, in the interest of justice, Shukri Thomas's sentence should be vacated because psychiatric hospitalization is "[the] better milieu [in which] to address [his] dire mental health needs and to manage his reintegration into the community . . . ."[49]

The Delaware Supreme Court ruled:

[Shukri] Thomas's argument misapprehends the standards by which [the Court] review[s] the Superior Court's sentencing decisions. '[G]enerally speaking, our review ends upon a determination that the sentence is within the statutory limits prescribed by the legislature.  Where the sentence falls within the statutory limits, we consider only whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind.'  [The Court is] satisfied that none of the impermissible considerations mentioned above formed the basis of the Superior Court's sentencing.  To the contrary, the sentencing judge, who had followed [Shukri] Thomas's case 'for a number of years,' found that [Shukri] Thomas posed a danger to the community and himself and that the never-ending cycle of commitment to and release from the Delaware Psychiatric Center was detrimental to [Shukri] Thomas.  These conclusions were supported by the evidence the Superior Court considered, and reliance on them was not an abuse of discretion.[50]

---

[49] *Thomas v. State*, 2020 WL 3259486, at *1 (Del. June 16, 2020) (TABLE).
[50] *Id.* (footnotes omitted).

Bound by that Court's standard of review, the Delaware Supreme Court was satisfied that the 17-year sentence of total confinement was not an abuse of discretion. Accordingly, by Order dated June 16, 2020, the Delaware Supreme Court affirmed this Court's October 21, 2019 sentence.[51]

### Request for Appointment of Counsel by Shukri Thomas to Pursue Postconviction Relief

Shukri Thomas filed a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure ("Rule 61 Motion") as a self-represented litigant on the grounds that he was denied the right to effective assistance of counsel, as well as a request for appointment of counsel.[52] The Court requested a response from the State to Shukri Thomas's request for appointment of counsel.[53]

---

[51] *Id.*

[52] Although Shukri Thomas's motion and request for counsel was received by the Prothonotary on July 14, 2020, it was not referred to this judicial officer for several months as a result of the limited number of individuals working in the courthouse for public safety reasons as required by the Judicial Emergency Order issued by the Delaware Supreme Court. *See* Order Decl. Jud. Emergency (Mar. 13, 2020) (Seitz, C.J.). Most recently, the Judicial Emergency Order was extended on December 2, 2020. *See* Admin. Order No. 14 (Del. Dec. 2, 2020) (Seitz, C.J.).

[53] The Court invited a response from the State's lawyers responsible for criminal prosecution in MHC, as well as counsel for DHSS because the issues related to conviction, sentencing and placement are inextricably linked with various placements at DPC. The Court emphasized in a letter to the Department of Justice dated December 10, 2020 that only the State's response to Shukri Thomas's request for appointment of counsel was requested, and not any response regarding whether there are procedural bars to the motion for postconviction relief or as to the merits of claims made by Shukri Thomas. *See State v. Thomas*, Nos. 1409004992 & 1409006424 (Del. Super. Dec. 10, 2020).

The State responded that "the State does not oppose the request for appointment of counsel, pursuant to Superior Court Criminal Rule 61(e)(3), based on [Shukri] Thomas's deteriorating mental illness."[54]

## Specific Exceptional Circumstances Warrant the Appointment of Counsel for Shukri Thomas's Rule 61 Motion

The Court has discretion to appoint counsel for convictions that result from a plea of guilty.[55] Here, the standard set forth for appointment of counsel is met. First, the Delaware Supreme Court affirmed this Court's final order on direct appellate review.[56] Second, there may be substantial claims to be addressed.[57] Third, if the motion for postconviction relief is granted, the result may be to vacate the convictions and release Shukri Thomas from DOC custody.[58] Finally, specific

---

[54] *See* State's Resp., Dec. 19, 2020.

[55] *See State v. Carpenter*, 2016 WL 3960290, at *2 (Del. Super. July 21, 2016) (referencing Rule 61(e)(2) as the appointment of counsel in guilty plea cases, which is now Rule 61(e)(3) after the 2017 amendment).

[56] Super. Ct. Crim. R. 61(e)(3)(i).

[57] Super. Ct. Crim. R. 61(e)(3)(ii). In addition to the grounds for relief identified by Shukri Thomas, appointed counsel may identify additional or different grounds for relief or counsel may conclude there are no meritorious grounds for relief. *See* Super. Ct. Crim. R. 61(e)(6); *see also* Super. Ct. Crim. R. 61(e)(7). The Court must also conduct a review of the record to determine whether the motion filed by Shukri Thomas as a self-represented litigant contains any reasonable ground for relief. *See Roth v. State*, 2013 WL 5918509, at *1 (Del. Oct. 31, 2013) (TABLE) (discussing when the court must conduct its own review of the record in order to determine whether a defendant's postconviction motion is "so totally devoid of at least arguably appealable issues").

[58] Super. Ct. Crim. R. 61(e)(3)(iii).

exceptional circumstances warrant the appointment of counsel given Shukri Thomas's history of deteriorating mental illness.[59]

## CONCLUSION

Accordingly, upon consideration of the request for appointment of counsel to pursue postconviction relief filed by Shukri Thomas; Rule 61 of the Superior Court Rules of Criminal Procedure; the facts and legal authorities set forth herein; statutory and decisional law; the obligation of the government to provide appropriate care to its most vulnerable citizens; concerns regarding criminalization of mental illness; and the entire record in this case, the Court finds there are specific exceptional circumstances that warrant appointment of counsel for Shukri Thomas to pursue a collateral attack on his conviction and sentencing.

Therefore, in the interest of justice, counsel shall be appointed for Shukri Thomas. Once counsel is appointed, a briefing schedule will be issued. In the meantime, the motion for postconviction relief filed by Shukri Thomas as a self-represented litigant is stayed.

---

[59] Super. Ct. Crim. R. 61(e)(3)(iv).

**NOW, THEREFORE,** this 30th day of December, 2020, for the reasons stated herein, the Motion for Appointment of Counsel filed by Shukri Thomas is hereby **GRANTED.** The motion for postconviction relief filed by Shukri Thomas as a self-represented litigant is hereby **STAYED.**

**IT IS SO ORDERED.**